IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TARA NICOLE MUELLER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>Uprising Seeds Inc.,<br><br>Defendant. | CLASS ACTION COMPLAINT<br><br>Case No. 1:26-cv-2245 |

## COMPLAINT

1) Plaintiff, TARA NICOLE MUELLER (hereinafter "Mueller"), brings this action on behalf of herself and all other persons similarly situated (hereinafter "Class Members") against Uprising Seeds Inc. (hereinafter "Defendant"), and states as follows:

2) Mueller is a visually-impaired and legally blind person who requires screen-reading software to access website content using her computer. Mueller uses the terms "blind" or "visually-impaired" to refer to individuals who meet the legal definition of blindness, including individuals whose best-corrected central visual acuity is 20/200 or less in the better eye or whose visual field in the better eye is limited to 20 degrees or less. Some individuals who meet this definition have limited vision; others have no vision.

3) According to the U.S. Census Bureau's 2024 American Community Survey, as summarized by the American Foundation for the Blind, approximately 9 million people in the United States, including approximately 285,000 individuals living in the State of Illinois, are visually impaired.

4) Mueller brings this civil rights action against Defendant for its failure to design, construct, maintain, and operate its Website https://www.uprisingorganics.com (hereinafter

"Website" or "the Website") to be fully accessible to and independently usable by Mueller and other blind or visually-impaired individuals. Defendant is denying blind and visually impaired individuals throughout the United States equal access to the goods and services Defendant provides to its non-disabled customers through the Website. Defendant's denial of full and equal access to its Website, and therefore denial of its products and services offered, is a violation of Mueller's rights under the Americans with Disabilities Act (the "ADA").

5) The Website provides to the public a wide array of the goods, services, price specials and other programs offered by Defendant. Yet, the Website contains significant access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the Website. In fact, the access barriers make it impossible for blind and visually-impaired users to even complete a transaction on the Website. Thus, Defendant excludes the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. With technological advances in recent years, assistive computer technologies now play an essential role in enabling blind and visually impaired individuals to access digital content, allowing blind and visually-impaired individuals to fully and independently access a variety of services.

6) Blind and visually impaired individuals often rely more heavily on online platforms due to mobility-related barriers. The lack of an accessible website means that visually impaired individuals are excluded from fully experiencing and transacting on the Website and from purchasing goods or services from the Website.

7) Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendant has chosen

to rely on an exclusively visual interface that provides no meaningful accommodations for screen-reader users. Defendant's sighted customers can independently browse, select, and buy online without the assistance of others. However, visually impaired individuals who rely on screen-reading software cannot independently complete a purchase on the Website.

8) By failing to make the Website accessible to visually impaired individuals, Defendant is violating basic equal access requirements under federal law.

9) Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired individuals.

10) Mueller has visited the Website on or about June 16, 2026, and most recently on or about October 6, 2026, with the specific intent of purchasing organic basil seeds, specifically the "Basil, Italian Large Leaf," on the Website. However, the access barriers described herein continuously prevented Mueller from completing that purchase independently. Mueller suffered, and continues to suffer frustration, humiliation, and discrimination as a direct result of Defendant's failure to provide a Website that is fully accessible to, and independently usable by, blind and visually-impaired individuals, in violation of her rights under the ADA.

11) Mueller is currently, and has been continuously, deterred from returning to the Website by her actual knowledge that the barriers she personally encountered on or about June 16, 2026, and most recently on or about October 6, 2026, remain unremedied. This ongoing deterrence is itself an injury-in-fact independent of any future visit, because Mueller cannot know whether the Website has become accessible without either attempting to use it again, which she reasonably

will not do given her past experiences, or obtaining assurance through this litigation that the barriers have been cured. Notwithstanding this deterrence, Mueller intends to and will attempt to purchase organic basil seeds, specifically the "Basil, Italian Large Leaf," from the Website again within thirty (30) days and periodically thereafter, once Defendant remedies the access barriers described herein. This concrete and particularized injury – both from Mueller's past inability to complete a purchase and her ongoing deterrence from returning – is actual, imminent, and redressable by the injunctive relief sought herein.

12) Because Defendant's Website is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Mueller seeks a permanent injunction to cause a change in Defendant's policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

**JURISDICTION AND VENUE**

13) This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because Mueller's claims arise under the laws of the United States, specifically Title III of the ADA, and 42 U.S.C. § 12181 et seq., as Mueller's claims are brought pursuant to 42 U.S.C. § 12182 and are enforceable through the remedies, procedures, and rights set forth in 42 U.S.C. § 12188.

14) The Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of conducting business in Indiana and has sufficient minimum contacts with this State to satisfy due process and the Indiana long-arm provision, Indiana Trial Rule 4.4(A). Defendant operates a publicly available interactive commercial Website through which it markets, sells, and ships its organic seeds and gardening supplies, and related products to consumers throughout the United States, including to consumers located in Indiana

and in this District, on a continuous and systematic basis as part of its ordinary retail operations. Mueller's claims arise directly out of Defendant's Indiana directed-conduct: Plaintiff, an Indiana resident, attempted to purchase Defendant's products from Indiana through the Website, and was denied full and equal access as a direct result of the barriers described herein. The exercise of jurisdiction over Defendant comports with traditional notions of fair play and substantial justice, as Defendant has continuously and deliberately targeted Indiana consumers as part of its ordinary course of business.

15) Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District because Mueller attempted to use the subject Website within this Judicial District.

16) Defendant regularly conducts business in the State of Indiana, including in this District. Defendant has committed, and continues to commit, the acts or omissions alleged herein in the Southern District of Indiana causing injury and violated rights the ADA prescribes to Mueller and to other blind and other visually impaired-consumers. A substantial part of the acts and omissions giving rise to Mueller's claims occurred in this District: on or about June 16, 2026, and most recently on or about October 6, 2026, Mueller has been denied the full use and enjoyment of the facilities, goods and services offered to the general public, on Defendant's Website in or around Hamilton County. These access barriers that Mueller encountered have caused a denial of Mueller's full and equal access in the past, and now deter Mueller on a regular basis from accessing the Defendant's Website in the future.

17) The United States Department of Justice Civil Rights Division has recently provided "Guidance on Web Accessibility and the ADA." It states in part, "the Department has

consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."

18) This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

19) This lawsuit is aimed at providing visually impaired users like Mueller a full and equal experience.

20) Mueller is and has been at all relevant times a resident of Hamilton County, State of Indiana.

## THE PARTIES

21) Mueller is legally visually impaired and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq. Her visual impairment substantially limits the major life activity of seeing. Mueller cannot use a computer without the assistance of screen reader software. Mueller has been denied the full enjoyment of the facilities, goods and services of the Website as a result of access barriers on the Website.

22) Defendant, a Washington Corporation, does business in this State with its principal place of business located at 1501 Fraser Street, Suite 105, Bellingham, WA 98229, being represented by its registered agent, Brian Campbell, 2208 Iron Street, Bellingham, WA 98225.

23) Defendant provides to the public the Website, which provides consumers access to an array of goods and services, including, the ability to purchase a wide selection of organic seeds for vegetables, herbs, specialty cut flowers, edible flowers, and grains. Consumers across the United States use Defendant's Website to purchase organic seeds and gardening supplies. Defendant's Website is a place of public accommodation within the definition of Title III of the

ADA, 42 U.S.C. § 12181(7), as it is a sales establishment operated by Defendant that offers goods and services to the public in the ordinary course of Defendant's retail business, regardless of whether that business is conducted through a physical storefront. The inaccessibility of the Website has deterred, and continues to deter, Mueller from making an online purchase of organic basil seeds.

## NATURE OF THE CASE

24) The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, and researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

25) Visually impaired individuals access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a visually impaired person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a visually impaired person can independently access the Internet. Unless websites are designed to allow for use in this manner, visually impaired individuals cannot fully access the information, products and services offered online.

26) For screen-reading software to function properly, website content must be capable of being rendered accurately into text. If the website content is not capable of being rendered into text, the visually impaired user is unable to access the same content available to sighted users.

27) Visually impaired users of Windows-enabled computers and devices have several screen-reading software programs available to them. Job Access With Speech, otherwise known as "JAWS", is currently one of the most popular, and downloaded screen-reading software programs.

28) The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.2 of the Web Content Accessibility Guidelines ("WCAG 2.2"). WCAG 2.2 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are widely followed by many large business entities and government agencies to ensure their websites are accessible. Courts and the Department of Justice have frequently looked to the WCAG 2.2 guidelines as a benchmark for website accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including, but not limited to: adding alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that visually impaired persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a visually impaired individual using a screen reader. Furthermore, websites must be accessible to users of all proficiency levels, including screen-reader users with minimal technical experience of screen-reading software and need to be able to work with all browsers. Finally, websites need to be continually updated and maintained to ensure that they remain fully accessible.

## FACTUAL ALLEGATIONS

29) Defendant controls and operates the Website in the State of Indiana and throughout the United States.

30) The Website is a commercial platform through which consumers can browse and purchase products and services for online sale. The online store allows the user to view organic seeds and gardening supplies, make purchases, and perform a variety of other functions.

31) Among the features offered by the Website are the following:

a) Consumers may use the website to connect with Defendant on various social media platforms, including Facebook and Instagram;

b) An online store that allows customers to purchase a wide selection of organic seeds for vegetables, herbs, specialty cut flowers, edible flowers, grains, and other products for delivery to their doorsteps; and

c) Learning about shipping and return policies, reading blog posts, purchase gift cards, and learning about the company, amongst other features.

32) This case concerns Defendant's policy and practice of denying visually impaired individuals' access to the goods and services offered by the Website. Due to Defendant's failure and refusal to remove access barriers to the Website, visually impaired individuals have been and are being denied equal access to Defendant as well as to the numerous goods, services and benefits offered to the public through the Website.

33) Defendant denies the visually impaired users access to goods, services and information made available through the Website by preventing them from freely navigating the Website.

34) The Website contains access barriers that prevent free and full use by Mueller and visually impaired individuals using keyboards and screen-reading software. These barriers are pervasive and include but are not limited to: inadequate focus order, changing of content without advance warning, unclear labels for interactive elements, and redundant links where adjacent links go to the same URL address.

35) When visiting the Website on or about June 16, 2026, and most recently on or about October 6, 2026, using JAWS screen-reader, Mueller encountered accessibility barriers that denied her full and equal access to the Website and prevented her from completing her intended purchase. The barriers described are not isolated or transient defects but are structural features of the Website's design and coding that affect core functions of the Website, including but not limited to, navigation, keyboard operation, and checkout, which render the Website inaccessible to, and not independently usable by blind and visually-impaired persons who use screen-reader software, including Plaintiff and the members of the putative class she seeks to represent.

a) Landmarks are not properly implemented on the home page, preventing blind users from navigating the page by landmarks and accessing its main regions due to inaccurate landmark markup;

b) Interactive elements are not keyboard focusable. The Website has functionality that is dependent on the specific devices, such as a mouse, and is not available to the assistive technology users;

c) Drop-down navigation menus are not fully operable using the keyboard. As a result, blind users cannot access all navigation options because some functionality depends on mouse interaction;

d) Labels of interactive elements do not provide sufficient context to identify their purpose. As a result, blind users cannot clearly determine the function or destination of the interactive elements;

e) Keyboard focus does not move to the dialog when it opens. As a result, blind users encounter content in an illogical sequence and cannot efficiently interact with the dialog using the keyboard;

f) The link text and alternative text of the image convey similar information and lead to the same destination. As a result, blind users must navigate through redundant links, making keyboard and screen reader navigation less efficient;

g) When the component receives focus, it causes an automatic change of context, which prevents blind users from knowing that an action occurs simply by focusing the element;

h) Interactive elements do not have accessible names. As a result, blind users cannot identify the purpose or function of the interactive elements;

i) After adding the selected item to the Cart, the website does not announce the updated cart value. As a result, blind users do not know whether the product has been successfully added or how many items are in the shopping cart;

j) The Navigation menu contains elements within drop-down menus, and they do not announce their state - "collapsed" or "expanded". As a result, assistive technology users do not know if they skipped sub-menu links.

36) Consequently, visually impaired customers are essentially prevented from purchasing any items on the Website.

37) The Website cannot be used to complete a transaction by keyboard alone. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Mueller and visually impaired people, it must be possible for the user to interact with the page using only the

keyboard. Indeed, Mueller and visually impaired users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, the Website's inaccessible design, which cannot be operated by keyboard alone to complete a transaction, denies Mueller and visually impaired customers the ability to independently navigate and/or make purchases on the Website.

38) Due to the Website's inaccessibility, Mueller and visually impaired individuals must in turn spend time, energy, and/or money to make their purchases at traditional brick-and-mortar retailers. Some visually impaired customers may require a driver to get to the stores or require assistance in navigating the stores. By contrast, if the Website was accessible, a visually impaired individual could independently investigate products and make purchases via the Internet as sighted individuals can and do. According to WCAG 2.2 Guideline 2.4.3 'Focus Order', the focus must move in a predictable and logical order through all interactive elements on the page. Ensuring proper focus order enables users, including those using assistive technologies such as screen readers or keyboard-only navigation, to navigate the content efficiently. If the focus order is not logically structured, users may become disoriented, making it difficult for them to understand or interact with the page's elements. This can significantly impair the accessibility and usability of a website for individuals with disabilities. Thus, Defendant's inaccessible design deprives Mueller and visually impaired customers of the opportunity to make purchases on the Website on their own.

39) The Website thus contains access barriers that deny full and equal access to Mueller, who would otherwise use the Website and who would otherwise be able to fully and equally enjoy the benefits and services of the Website in the State of Indiana and throughout the United States.

40) Tara Nicole Mueller made multiple attempts to complete a purchase on the Website. On or about June 16, 2026, while searching online for organic herb seeds, she visited Defendant's Website, Uprisingorganics.com, and decided to explore it because it offered a rich selection of organic seeds and other related products. She was particularly interested in purchasing organic basil seeds so that she could use the basil for cooking and grow it alongside the other herbs in her kitchen garden. She was drawn to Uprising Seeds because of its large product selection, which included many varieties of basil. The wide selection and affordable pricing made the Website appealing to her. During her visit, Mueller explored the Website's herb seed category with the intent to make a purchase. However, she encountered multiple accessibility barriers that prevented her from independently completing her intended purchase. She returned to the Website on or about October 6, 2026, and attempted to purchase Basil, 'Italian Large Leaf,' but was deterred from completing her purchase due to the persisting accessibility issues. While navigating the Website, Mueller was forced to repeatedly navigate through elements with the same destination because the product links conveyed information similar to the interactive images positioned above them. This redundancy caused unnecessary repetition, increased navigation time, and reduced browsing efficiency. Furthermore, within the cart dialog, when the increase quantity button received focus, it caused an unexpected change in context as the dialog suddenly reloaded. As a result, Mueller was unable to move keyboard focus properly, making it difficult to reach other elements, including the checkout button. Additionally, after Mueller activated the cart button, the cart dialog appeared, but focus did not move into the dialog and instead remained on the underlying page. This prevented Mueller from efficiently accessing and interacting with the cart contents and controls. These access barriers render the Website inaccessible to, and not independently usable by, blind and visually impaired individuals.

41) Mueller specifically prefers Defendant's organic basil seeds and related gardening products over other available alternatives. Mueller has purchased basil before, including from a local grocery store at the beginning of summer, but the basil did not grow well or last very long. On or about June 16, 2026, and again on or about October 6, 2026, Mueller visited Defendant's Website while looking for organic basil seeds. She was particularly interested in Defendant's selection of basil varieties, good pricing, and other gardening products. Mueller is particularly interested in using basil for cooking and adding it to the herb garden in her kitchen. She is also interested in Defendant's other gardening products, including spring and summer flowers and other herbs. Mueller’s intent to purchase from Defendant is not contingent or speculative: she intends to return to the Website and complete her purchase of Defendant's herbs, within thirty (30) days of Defendant's remediation of the access barriers described herein, and to return periodically thereafter to purchase herbs and flower seeds. Mueller is not using this litigation merely as a vehicle to challenge inaccessible websites in the abstract; she has an actual, product-specific interest in purchasing Defendant's basil seeds because she wants to enlarge her kitchen garden with flavorful herbs for home cooking.

42) The barriers Mueller encountered arise only in the course of an actual transaction and are not conditions visible on a page at rest. The failure of keyboard focus to move to the cart dialog occurs after Mueller activated the cart button and the dialog opened. A page may present no apparent defect on inspection and nonetheless be impossible for a blind user to purchase from. Plaintiff has undertaken a reasonable, good-faith inquiry into the current condition of the Website, and upon information and belief each of the barriers described herein remains present and continues to prevent blind and visually impaired individuals from independently selecting and purchasing products. Defendant has never represented to Mueller that it has remediated any of

those barriers, and Mueller has no assurance that the barriers she personally encountered will be corrected, and her injury will continue.

43) Mueller has articulated a genuine, product-specific interest in Defendant's organic basil seeds. That interest is rooted in her interest in cooking and her desire to add basil to the herb garden in her kitchen, independent of, and predates, this litigation, as described above.

44) As described above, Mueller has actual knowledge of the fact that Defendant's Website contains access barriers that render the Website inaccessible to, and not independently usable by, visually impaired individuals.

45) These barriers to access have denied Mueller full and equal access to, and enjoyment of, the goods, benefits and services of the Website.

46) Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a) constructed and maintained a website that is inaccessible to visually impaired Class Members with knowledge of the discrimination; and/or

b) constructed and maintained a website that, despite being sufficiently intuitive for sighted users, is inaccessible to visually impaired Class Members; and/or

c) failed to take action to correct these access barriers in the face of substantial harm and discrimination against visually impaired Class Members.

47) Defendant utilizes standards, criteria, or methods of administration that have the effect of discriminating against or perpetuating the discrimination of others.

48) Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits, and services of Uprisingorganics.com, Plaintiff and the class have suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of Defendant's conduct.

## CLASS ACTION ALLEGATIONS

49) Mueller, on behalf of herself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access the Website and as a result have been denied access to the enjoyment of goods and services offered by the Website, during the relevant statutory period."

50) There are questions of law and fact common to the Class, including without limitation, the following:

(a) Whether the Website is a "public accommodation" under the ADA;

(b) Whether Defendant, through its Website, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to individuals with visual disabilities in violation of the ADA; and

(c) Whether Plaintiff and the Class are entitled to declaratory and injunctive relief, and the nature and scope of that relief.

51) Mueller's claims are typical of the Class. The Class, like Mueller, is composed of legally blind individuals who use screen-reading software, and claims that Defendant has violated the ADA by failing to update or remove access barriers on its Website so it can be independently accessible to the Class.

52) Mueller will fairly and adequately represent and protect the interests of the members of the Class because Mueller has retained and is represented by counsel competent and experienced in complex class action litigation, and because Mueller has no interests antagonistic to the members of the class. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Mueller and the Class as a whole.

53) Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class Members clearly predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

54) Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by individuals with visual disabilities throughout the United States.

## FIRST CAUSE OF ACTION
***Violation of the Americans with Disabilities Act ("ADA")***

55) Mueller, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

56) Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or

criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12182(b)(1)(D)(i).

57) The Website is a place of public accommodation within the definition of 42 U.S.C. § 12181(7).

58) Defendant is subject to Title III of the ADA because it owns and operates the Website.

59) Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(i), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

60) Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(ii), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

61) Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

62) In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(iii), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise

treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

63) There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and focus order. Incorporating the basic components to make their Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

64) The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 et seq., and the regulations promulgated thereunder. Patrons of Defendant who are visually impaired have been denied full and equal access to the Website, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

65) Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

66) As such, Defendant discriminates, and will continue in the future to discriminate against Mueller and members of the proposed Class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq. and/or its implementing regulations.

67) Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Mueller and members of the proposed Class will continue to suffer irreparable harm.

68) The actions of Defendant were and are in violation of the ADA, and therefore Mueller invokes her statutory right to injunctive relief to remedy the discrimination.

69) Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Mueller requests relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against the Defendants as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, et seq.,

a) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to bring the Website, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by visually impaired individuals, including but not limited to conformance with WCAG 2.2 Level AA standard, and further requiring Defendant to maintain such compliance on an ongoing basis, including with respect to any future updates, changes, or modifications to the Website;

b) An order requiring Defendant to submit to the Court and Plaintiff's counsel, within sixty (60) days of entry of judgment, and annually thereafter for a period of three (3) years, a written report detailing the specific steps taken to achieve and maintain ADA compliance, accompanied by an audit conducted by a qualified independent accessibility consultant;

b) A declaration that Defendant owns, maintains, and operates the Website in a manner that discriminates against the visually impaired and which fails to provide access for persons with disabilities as required by the Americans with Disabilities Act, 42 U.S.C. § 12182,

c) An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Mueller as Class Representative, and her attorneys as Class Counsel;

d) Pre- and post-judgment interest;

e) An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 42 U.S.C. § 12205;

f) Such other and further relief as this Court deems just and proper.

Dated: October 16, 2026

Respectfully Submitted,

EQUAL ACCESS LAW GROUP, PLLC

**/s/ Jason B. Marshall**
By: Jason B. Marshall
IN Bar No.: 36889-49
4903 Avenue N
Brooklyn, NY 11234
jmarshall@ealg.law
(463) 777-4196
*Attorneys for Plaintiff*